STEFFENY HOLTZ (SBN 177412)
LAW OFFICES OF STEFFENY HOLTZ
880 Apollo St., Suite 229
El Segundo, CA 90245
Tel:    (323) 864-3227/FAX: 323 940-4021
email:  esqcolombo@aol.com

Attorney for Plaintiff,
JEFFREY SIMONEK

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY SIMONEK,<br><br>             Plaintiff,<br><br>vs.<br><br>CITY OF EL SEGUNDO; EL SEGUNDO POLICE DEPARTMENT, MITCH TAVERA, Chief of Police of the El Segundo Police Department; ERIC ATKINSON; JANET GARZA; RAY GARCIA; JEFFREY HUMPHREY; GREG BURNER; KELLY BURNER; BRIAN FLAD-HAMMER; DAYNA FLADHAMMER and DOES 1 through 10, inclusive,<br><br>             Defendants. | Case No.: 2:15-cv-09190-JAK-AS<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br>1. Violation of Civil Rights<br>   (42 U.S.C. § 1983)<br>2. *Monell* Claim-Failure to Train, Supervise, Unconstitutional Custom, Practice or Policy<br>   (42 U.S.C. § 1983)<br>3. Conspiracy to Violate Civil Rights- Police Defendants and Others<br>   (42 U.S.C. § 1985(2) (3))<br>4. Conspiracy to Violate Civil Rights- Citizen Defendants - Burners<br>5. Malicious Prosecution - Fladhammers<br>6. Intentional Infliction of Emotional Distress - Fladhammers<br>7. Conspiracy to Violate Civil Rights- Citizen Defendants - Fladhammers<br><br>**DEMAND FOR JURY** |

COMPLAINT FOR DAMAGES

1

**COMES NOW** Plaintiff JEFFREY SIMONEK ("Plaintiff") alleges as follows:

## JURISDICTION

1. This Court has Jurisdiction under 28 U.S.C. §1343, (1), (2), (3) and (4). This action for monetary damages arises under 42 U.S.C. §1983 and §1985, the United States Constitution, the laws of the State of California and common law principles to redress a deprivation under color of state law of rights, privileges and immunities secured to Plaintiff by statutes above, and by the Fourth, Fifth, Eighth and Fourteenth Amendments.

## PARTIES

2. Plaintiff JEFFREY SIMONEK is an individual residing in the County of Los Angeles, State of California, who spent nearly two years in jail after being charged with 20 counts of lewd acts that he did not commit.

3. At all times alleged herein, Defendant MITCH TAVERA ("TAVERA"), an individual, was and is the Chief of Police of El Segundo Police Department, City of El Segundo.

4. At all times alleged herein Detective ERIC ATKINSON ("ATKINSON"), an individual, Sgt. JANET GARZA ("GARZA"), an individual, Lt. RAY GARCIA ("GARCIA"), an individual, Det. JEFFREY HUMPHREY ("HUMPHREY", an individual, and DOES 1 through 10, inclusive and each of

COMPLAINT FOR DAMAGES

2

them were individuals and employees of the City of El Segundo ("CITY") and the El Segundo Police Department ("ESPD"). Defendant TAVERA is and was at all relevant times, the highest ranking law enforcement policymaker for CITY. These defendants, including TAVERA may sometimes be referred to as "INDIVIDUAL POLICE DEFENDANTS".

5. Defendant CITY OF EL SEGUNDO ("CITY") is and was at all times mentioned herein a public entity and an incorporated city duly authorized and existing as such in and under the laws of the State of California. At all times mentioned herein, Defendant CITY possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of Defendant El Segundo Police Department, their other operations, and subdivisions presently unidentified to Plaintiff, their tactics, training and investigation, methods, practices, customs and usages related to internal investigations, personnel supervision and records maintenance, and powers of arrest.

6. Prior to August 2012, defendant CITY established and operated the El Segundo Police Department to investigate allegations of criminal activity in the city. CITY assigned personnel to act as investigating officers, detectives, supervising officers, and Chief of Police. Defendant CITY failed to train persons so assigned and failed to provide supervision to persons so assigned so as to protect citizens from false accusations, incarceration, and prosecution and ensuring

protection of their constitutional rights. At all times relevant hereto, defendant CITY assigned persons as investigating officers, as detectives and as supervising officers up to the Chief of Police. The supervisors and Chief personally participated in the investigation of Plaintiff and other acts alleged herein below. Defendant CITY failed to train personnel, including defendant officers, their supervising officers, sergeants, lieutenants and the Chief of Police in the appropriate investigation, procedures and practices for handling and interviewing witnesses and other persons with information in cases alleging the sexual abuse of children, including allegations against Plaintiff.

Defendant CITY adopted and ratified policies, customs and practices in place at the El Segundo Police Department as implemented and executed by the INDIVIDUAL POLICE DEFENDANTS.

7. At all times alleged herein, Defendant KELLY BURNER ("KELLY B.") is and was an individual, and the mother of Center Street Elementary School student Ethan B. (a minor whose last name shall not be referred to herein) and spouse of GREG BURNER ("GREG B.").

8. At all times alleged herein, Defendant GREG BURNER. is and was an individual, and the father of Center Street Elementary School student Ethan B. and spouse of KELLY B.

COMPLAINT FOR DAMAGES

4

9. At all times alleged herein, Defendant BRIAN FLADHAMMER ("BRIAN F."). is and was an individual, and the father of Tommy F. (a minor whose last name shall not be referred to herein), a camper at Painted Turtle Camp.

10. At all times alleged herein, Defendant DAYNA FLADHAMMER ("DAYNA F.") is and was an individual, and the mother of Tommy F., a camper at Painted Turtle Camp.

11. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated as a DOE is intentionally and negligently responsible in for the events referred to herein, and thereby proximately caused injuries to Plaintiff. The true names and capacities of DOES 1 through 10, inclusive, and each of them, are not now known to Plaintiff, who therefore sues said Defendants by such fictitious names, and will be added to this action when their true names and capacities have been discovered.

12. At all times alleged herein, each of the defendants was the agent and employee of each of the other defendants, acting in the course and scope of his/her agency and employment, and with the consent and ratification of his/her principal and employer.

13. Each of the defendants performed the acts and omissions, hereinafter alleged, in bad faith, with reckless indifference to Plaintiff's clearly established

COMPLAINT FOR DAMAGES

5

constitutional rights under state and federal constitutional law, and with knowledge that his/her conduct violated clearly established law.

## STATEMENT OF FACTS

### A. Introduction

14. On October 27, 2015, a jury in Los Angeles Superior Court, Department 103, Honorable Curtis Rappe, acquitted Plaintiff JEFFREY SIMONEK of all counts following the indictment of December 13, 2013, that charged him with 20 counts of lewd acts on 13 different children (violations of Penal Code Section 288(a)). The acts were alleged to have occurred at Center Street Elementary School in El Segundo (9 boys), at Walton's Grizzly Lodge in Lake Tahoe, (2 boys), and at Painted Turtle Camp in Lake Hughes, (2 boys) The jury acquitted Plaintiff after deliberating six hours, following a six week trial. Plaintiff was a first year elementary school teacher. He had no prior criminal history. He remained incarcerated in the Los Angeles County Jail from the date of his arrest on November 26, 2013 until he was acquitted on October 27, 2015. During approximately two years of incarceration, the Los Angeles County Sheriff's Department classified Plaintiff as a pedophile who victimized young boys. Plaintiff suffered harm while held in jail on 20 million dollar bail.

15. Plaintiff was employed at Center Street Elementary School in El Segundo, teaching 5th grade during the 2011-2012 school year. He had begun

working at that school as a teacher's aide in 2007. Plaintiff was never informed of any complaints that he had committed any lewd act(s). Plaintiff at all times followed the customs and practices of his mentor teachers and senior colleagues as they instructed him.

16. On or about August 1, 2012, El Segundo School District offered Plaintiff a contract to teach his second year (2012-2013). On that same date, an anonymous complaint was lodged with the Department of Children and Family Services ("DCFS Complaint") against Plaintiff. It was later discovered that two of his colleagues had filed that complaint.

17. 41 Witnesses testified at the grand jury proceeding held in November 2013. In September, 2015 during Plaintiff's criminal trial, INDIVIDUAL POLICE DEFENDANTS divulged an archive of secret recordings of interviews of 32 individuals to the Prosecutor, Simone Shea, and thus to Plaintiff's criminal counsel for the first time. The archive included the interviews of 20 of the 41 grand jury witnesses. This disclosure occurred during Plaintiff's trial, 2 years after the recorded interviews and the grand jury proceeding. These recordings individually and cumulatively contained exculpatory and impeachment evidence. In withholding these recordings from the grand jury, Defendants procured a grand jury indictment by fraud, corruption and wrongful conduct in bad faith and acted with reckless disregard for the clearly established constitutional rights of Plaintiff.

COMPLAINT FOR DAMAGES

7

But for the cumulative impact of Defendants' suppression of exculpatory and/or impeachment evidence before the grand jury as detailed hereinbelow, there is a reasonable likelihood and probability that the judgment of the grand jury would have been different, and in favor of Plaintiff.

### B. The False DCFS Complaint and the Suppressed Archive of Recordings

18. Two female teacher colleagues of Plaintiff anonymously made a complaint to DCFS immediately upon learning Plaintiff's teaching contract had been renewed for a second year. Said complaint was forwarded to the El Segundo Police Department. ESPD and Defendants TAVERA, GARCIA and GARZA assigned Defendant HUMPHREY to investigate the complaint. Defendant HUMPHREY, under the direct supervision of Defendant GARZA and others, began investigating said anonymous complaint. The complaint alleged that (1) Plaintiff had touched students by "drawing young boys into his lap open legs, massaged their necks or touches them for no reason at all;" (2) that Plaintiff had taken a "particular liking to a male student as evidenced by eating lunch with him alone, going to the child's sporting events unannounced and uninvited, and parking outside of the child's home;" and (3) that Plaintiff "touched a 7-year old boy inappropriately by rubbing the boy's back and buttocks over his clothing", and that Plaintiff had "put his nose close to the boy's nose and rubbed noses with the boy."

19. Defendants HUMPHREY and GARZA identified the two DCFS complainants. Defendants received information revealing complainants' bias against Plaintiff because complainants perceived him to be gay. Defendants HUMPHREY and GARZA then arranged for Plaintiff to be placed on mandatory leave from his teaching position. Defendants, after conferring with Plaintiff's teaching colleagues and others found no evidence that Plaintiff had committed any crime. Defendants HUMPHREY, GARZA, ATKINSON, GARCIA and TAVERA should have ended the inquiry against Plaintiff then.

Defendant HUMPHREY, GARZA, ATKINSON, GARCIA and TAVERA slandered Plaintiff and suppressed exculpatory evidence. Their actions and intentional omissions wrongfully caused Plaintiff loss of his gainful employment as a teacher, damage to his reputation and loss of his liberty. Defendants acted in reckless disregard for Plaintiff's clearly established constitutional rights to intentionally discriminate against him because of Plaintiff's sexual orientation, and to deprive him of due process. Defendants withheld evidence of bias, impeachment evidence, contradictory and other favorable exculpatory evidence from the grand jury, and thereby procured an indictment by fraud, corruption and wrongful conduct in bad faith and acted with reckless disregard for the clearly established constitutional rights of Plaintiff. There is a reasonable likelihood and probability that but for Defendants' conduct in suppressing the above exculpatory

and impeachment evidence, the judgment of the grand jury would have been different and in favor of Plaintiff as described more particularly below.

*Suppressed Evidence of DCFS Alleged Victim Josh P.*

20. The Grand Jury heard testimony from Josh P., Josh P.'s mother, Josh P.'s teacher, Ann Leonard, and faculty member Donna Scaltrito that Plaintiff had eaten lunch with Josh P., attended Josh P.'s sporting event and had been on Josh P.'s street. Defendants intentionally omitted exculpatory evidence for the impeachment of these witnesses material to the issues before the jury. The jury was thereby wrongfully guided to conclude that Plaintiff acted with sexual intent toward Josh P. Through this testimony, the groundwork was laid for the inference of Plaintiff's sexual intent toward all other alleged victims who were brought forward. Defendants suppressed information from Josh P., teachers Ann Leonard and Donna Scaltrito as described hereinbelow.

21. On or about September 11, 2012, Defendants HUMPHREY and GARZA secretly recorded an interview of Josh P. in which he provided exculpatory information, to wit, that he had "no concerns about [Plaintiff] at all." Josh P. denied Plaintiff had ever said or done anything that made him feel uncomfortable; and he denied that Plaintiff had ever touched him inappropriately. In his interview, Josh P. told defendants HUMPHREY and GARZA that Plaintiff showed no abnormal interest in him. Josh P. also said that he was in Plaintiff's

before-school math intervention class where Plaintiff frequently brought breakfast for all the students, including the females. Josh P. also explained why Plaintiff was seen on his street: there was a school field trip which included a walk by students on a path which included the street where he lived, and that Plaintiff was en route from the elementary school to the high school for the field trip. Josh P. also explained that Plaintiff had eaten lunch with him on campus, and this occurred because he was having a "really rough time."

22. Defendant HUMPHREY and GARZA intentionally suppressed their interview of Josh P.; they omitted entirely from their police report any mention that they had conducted that interview. <u>It was not until September 25, 2015, 10 days after Plaintiff's criminal trial began - almost two years after the grand jury proceedings were completed-</u> that defendants provided the exculpatory recording of Josh P.'s interview to Plaintiff's criminal defense counsel.

23. Defendants HUMPHREY and GARZA kept from the grand jury further exculpatory evidence they had received from teacher Ann Leonard respecting Josh P. This evidence consisted of an August 16, 2012 secret recording of teacher Ann Leonard, where she provides the information that Plaintiff had been directed by another teacher to "reach out" to Josh P. Defendants misled the grand jury about why Plaintiff had lunch with Josh P., fostering the false inference that

Plaintiff had a sexual intent and was eating lunch with Josh P. for that reason, rather than that he was only following directions.

24. On or about August 22, 2012, Defendant ATKINSON together with Defendant GARZA secretly recorded an interview with teacher Donna Scaltrito. This recording was not provided to Plaintiff's defense counsel until after the commencement of Plaintiff's criminal trial, in September, 2015. Scaltrito told the defendants that she was one of the two DCFS anonymous complainants. In this recording, Scaltrito explained that teachers ordinarily would be invited to off-campus functions and events of students, including Little League games. Defendants suppressed evidence that Plaintiff's attendance at such events was normal behavior for teachers. This perspective would have refuted the inference that Plaintiff had a sexual motive for attending sports events of students, including Josh P.

25. Defendant HUMPHREY and GARZA's suppression of the above exculpatory information provided a misleading context for the subsequent testimony of grand jury witness Tina P., mother of Josh P. Tina P. reiterated Plaintiff's actions which the jury heard without the exculpatory explanations that should have been presented. Defendants' concealment of the exculpatory explanations for Plaintiff's conduct reinforced false inferences as to Plaintiff's sexual intent.

26. In suppressing the secret exculpatory tapes of Josh P., Ann Leonard, Donna Scaltrito and Tina P., as described above, Defendants HUMPHREY, ATKINSON, GARZA, GARCIA and TAVERA fraudulently, corruptly, wrongfully, and in bad faith procured an indictment against Plaintiff by withholding material and exculpatory evidence from the grand jury including the false and misleading accusations of Plaintiff having a sexual interest in Josh P. thus creating spillover prejudice that Plaintiff had a sexual interest in the other boys at issue before the grand jury. There is a reasonable likelihood and probability that without Defendants' suppression of the exculpatory and/or impeachment evidence herein, the judgment of the grand jury would have been different, and in favor of Plaintiff.

*Suppressed Evidence of DCFS Alleged Victim - Danny B.*

27. Grand jurors heard evidence concerning Danny B., whom Defendants HUMPHREY, ATKINSON and GARZA identified as one of the subjects of the DCFS complaint. Grand jurors heard false evidence that Plaintiff had sexual intent toward Danny B. This evidence was presented through the grand jury testimony of teachers Donna Scaltrito and Rashell LeMay. Defendants suppressed exculpatory witness information from Peggy B., Danny's mother. Defendants suppressed secret recordings containing exculpatory impeachment evidence, and evidence of bias of these teachers. Defendants concealed favorable witness Peggy B. who had

told defendants she had sought out Plaintiff to tutor her son, rather than Plaintiff initiating such contact.

28. On or about August 22, 2012, Defendant ATKINSON together with supervisor GARZA secretly recorded an interview of teacher Donna Scaltrito. Said recording was not provided to Plaintiff's trial counsel until after the commencement of Plaintiff's in-progress jury trial, almost 2 years after the grand jury. On said recording Scaltrito, one of the two DCFS complainants, identified student Danny B. as a boy Plaintiff may have touched referred to in her DCFS complaint. Scaltrito's recording revealed that: 1) she harbored ill will toward Plaintiff; 2) She described him as "arrogant" and "flamboyant"; 3) She alluded to Plaintiff being homosexual; 4) Scaltrito said that she didn't want Plaintiff to return to teach; and 5) She said that Danny B's family "loved" Plaintiff and sought him out, thus refuting the assertion that <u>Plaintiff</u> sought out Danny B. and which showed that Plaintiff did not prey on Danny B. Defendants concealed Scaltrito's information from the grand jury, thereby allowing the jury to form the false impression that Plaintiff initiated contact with and sought out Danny B., again imputing sexual intent of Plaintiff toward Danny B. and other boys the subject of the grand jury.

29. On August 16, 2012, Defendants HUMPHREY and GARZA secretly recorded an interview of teacher Rashell LeMay. This recording was not provided

COMPLAINT FOR DAMAGES

14

to Plaintiff's counsel until September, 21, 2015 after Plaintiff's trial was in-progress. This recording was exculpatory, in that it revealed LeMay's homophobia; and that Danny's mother's pursued Plaintiff to be her son's tutor.

30. On August 23, 2012, Defendants ATKINSON and GARZA secretly recorded an interview of Peggy B. Peggy B. is the mother of Danny B. Defendants HUMPHREY and GARZA hid this recorded interview of Peggy B. and did not provide it to Plaintiff's defense counsel until his criminal trial was in progress. This recording contained exculpatory information, that Plaintiff tutored Danny B. at Peggy's request, and that it was Peggy, not Plaintiff, who requested that Danny B. be reassigned to Plaintiff's class. Defendants created the false impression that Plaintiff was preying on Danny B. and possessed sexual intent as to him and therefore, as to other boys at issue before the grand jury.

31. In hiding the secret exculpatory recordings of Scaltrito, LeMay and Peggy B. as described above, Defendants misled the grand jury that Plaintiff sought out Danny B. Defendants HUMPHREY, ATKINSON and GARZA and other supervisors fraudulently, corruptly, wrongfully, and in bad faith procured an indictment against Plaintiff by withholding material, and exculpatory and impeachment evidence from the grand jury, thereby depriving Plaintiff of his clearly established constitutional rights. In withholding this evidence from the grand jury, Defendants misled the grand jurors to believe Plaintiff had a sexual