STEFFENY HOLTZ (SBN 177412)
LAW OFFICES OF STEFFENY HOLTZ
880 Apollo St., Suite 229
El Segundo, CA 90245
(323) 864-3227

Attorney for Plaintiff,
JEFFREY SIMONEK

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY SIMONEK,<br><br>                        Plaintiff,<br><br>vs.<br><br>CITY OF EL SEGUNDO; EL SEGUNDO POLICE DEPARTMENT, MITCH TAVERA, Chief of Police of the El Segundo Police Department; ERIC ATKINSON; JANET GARZA; RAY GARCIA; JEFFREY HUMPHREY; GREG BURNER; KELLY BURNER; BRIAN FLADHAMMER; DAYNA FLADHAMMER;, and DOES 1 through 10, inclusive,<br><br>                        Defendants. | Case No.: 2:15-cv-09190-JAK-AS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS BY THE DEFENDANTS GREG BURNER AND KELLY BURNER**<br><br>(Filed concurrently with the Declaration of S. Holtz Pursuant to Rule 60, Requesting Relief Re Late Filing)<br><br>Date:  July 26, 2016<br>Time:  8:30 a.m.<br>Ctrm:  750<br><br>. |

COMES NOW Plaintiff Jeffrey Simonek and opposes the Motion to Dismiss of

defendants Greg Burner and Kelly Burner as follows:

## I.    INTRODUCTION

Plaintiff filed a First Amended Complaint (FAC) which includes an action against Greg Burner and Kelly Burner titled, "Fourth Cause of Action for Conspiracy to Deprive Due Course of Justice and Equal Protection" (42 U.S.C. § 1985 (2), (3)).

This title notwithstanding, the body of the cause of action contains allegations of fact sufficient to support a claim under § 1983 claim based on conspiracy and includes several references to "Sec. 1983." This was pointed out in the meet and confer exchange between the parties by the undersigned counsel to the Burners' counsel. (Defs' Exh. 3, p. 9, ¶ 2, item 3.)

The Burner defendants have responded with a motion to dismiss. While they attack the section 1985 aspect of the Fourth Cause of Action, they do not attack the § 1983 aspect.

The Burners' legal attack on the § 1985 claim is twofold: (1) Plaintiff fails to allege facts supporting a conspiracy; and (2) fails to allege a "legally protected class" of which plaintiff was a member. Defendants claim Plaintiff is suing "simply because Mrs. Burner cooperated with law-enforcement and Mr. Burner testified at trial."

It will be demonstrated below that the Burners' attack is without merit. Their arguments regarding Plaintiff's conspiracy pleading ignore the relevant case law and ignore a quantity of facts alleged in the complaint. As for their "legally protected class"

argument, they rely on old cases which are of questionable relevancy, given the United States Supreme Court rulings related to sexual orientation based discrimination.

As to the Sec. 1983 claim stated in the Fourth Cause of Action, notwithstanding moving defendants' failure to attack such and notwithstanding that they have thus impliedly conceded the viability of the 1983 aspect, it will be demonstrated that case law recognizes the relationship between one and the other and that even if the "protected class" element is lacking to support a § 1985 conspiracy, a § 1983 claim against a private citizen based on conspiracy will survive when there are police participants and the object of the conspiracy is the deprivation of federal constitutional rights.

## II.    STATEMENT OF FACTS

The FAC reflects the following facts:

Ethan B. was interviewed by El Segundo Police Detectives Humphrey and Garza on 8/29/12. (FAC, ¶127.) Ethan did not claim being touched on the penis or on the buttocks in the interview. (Id., ¶ 38.) Ethan states facts evidencing his having both a motive to lie and a bias against Plaintiff. (Id., ¶ 39.) After interviewing Ethan, Humphrey and Garza immediately interviewed Ethan's mother, Kelly B. She indicated she was furious with Plaintiff, that she had complained to the principal that Plaintiff had publicly disparaged her son and that Plaintiff had said publicly that Ethan was a discipline problem. (Id., ¶40.) Kelly evidenced a bias and motive against Plaintiff. (Id., ¶ 39.) Kelly and Ethan's dad, Greg, were aware of a campaign by teachers to fire

Plaintiff. (Id., ¶127) while Humphrey and Garza provided information to Kelly that they were seeking criminal accusers of Plaintiff. (Id., ¶¶ 40, 44.)

Ethan B., Kelly B and GREG B. wanted to retaliate against Plaintiff, and Ethan B. talked with his circle of best friends about the substance of his interview with police (FAC, ¶44.) The B. defendants knew of and conspired with Victor K. and Fabian G.'s parents that their children would combine to falsely accuse Plaintiff so that he would be fired and falsely accused of crimes. (Id., ¶127.)

Two weeks after Humphrey and Garza spoke with Ethan and Kelly, Kelly spoke with Michael E. (a coach at the school and father of Victor K., Ethan's friend) and they discussed making accusations against Plaintiff. (FAC, ¶ 44.) Michael E. and Maria G. (also a teacher at the school and mother of Fabian G., Ethan's friend) then spoke and discussed making accusations against Plaintiff. (Id., ¶44). After the conversations between these parents, these children — Ethan's friends — brought forth the first false accusations of penis touchings and thus the first criminal allegations against Plaintiff. (Id., ¶ 42).

The children accusers who came forth with allegations of criminal activity sought by police, after Ethan B. had denied such activity, were Ethan B.'s close friends Victor and Fabian. (FAC ¶ 43.) Greg B. and Kelly B. continued to make inquiries of Ethan and eventually cajoled their son to make the accusation of Plaintiff sexually touching him. (Id., ¶127.) Finally, in November, 2013, Greg B. brought Ethan to the grand jury. Ethan too now made a false allegation for the first time that Plaintiff had touched him on the

genitals. (FAC ¶ 38.) At trial, Greg B. testified falsely that he had relayed to the prosecutor statements from his son to corroborate Ethan's sexual accusation at the grand jury. (Id., ¶131.)  Kelly B. and Greg B. knew that Ethan denied any sexual touching of him by Plaintiff during Ethan's recorded police interview on 8/29/12.  Kelly and Greg both knew they had engendered the accusations by Ethan by cajoling him.  They acted intentionally.  (Id., ¶134.)

Defendants Humphrey and Garza informed Ethan B., Kelly B. and teachers of their desire to discover reports of criminal activity by Plaintiff. (Id., ¶ 44.) Ethan B., Kelly B., Greg B. and Defendants Humphrey and Garza all conspired together to have Plaintiff falsely accused of touching boys on their penises and/or buttocks. (Id., ¶ 44.) Defendants Kelly B. and Greg B. and Detectives Humphrey and Garza conspired that Ethan would present false testimony before the grand jury (Id., ¶¶ 128, 129.)  Defendant Humphrey acted knowingly in misleading the grand jury regarding Ethan's prior denial that Plaintiff ever touched his private parts and in so doing, he acted in furtherance of the conspiracy. In addition, in suppressing the exculpatory evidence of Ethan's prior recorded police interview wherein he denied being touched on the genitals, Humphrey and Garza continued the conspiracy to falsely bring criminal allegations against Plaintiff.  These efforts were intended to impede the due course of justice, including by Defendants Kelly B. and Greg B. in their son providing knowingly false testimony before the grand jury proceeding.  Additionally, they were made with the intent to deny Plaintiff equal protection of the laws. (Id., ¶ 129.) Defendants did so based on Plaintiff's

sexual orientation. (Id., ¶130.)

## III.   LEGAL STANDARDS GOVERNING MOTIONS TO DISMISS

A Motion to Dismiss should not be granted "unless it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Clegg v. Cult Awareness Network* (9th Cir. 1994) 18 F.3d 752, 754. All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party. *Buckey v. County of Los Angeles* ((1992 9th Cir.) 968 Fed.2d 791, 794, cert. denied, 506 U.S. 999, 113 Sup.Ct. 599, 121 L.Ed.2d 536. Generally, the Court may not consider any material beyond the pleadings in ruling on a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Branch v. Tunnell* (1994) 14 F. 3d 449, 453 (9th Cir.), cert. denied, 512 U.S. 1219, 114 Sup.Ct. 2704, 129 L.Ed.2d 832 (overruled on other grounds by *Galbraith v. County of Santa Clara* (9th Cir. 2002), 307 F. 3d 1119.)

## IV.   THE BURNERS' MOTION IGNORES A QUANTITY OF FACTS PLEADED TO MEET THE REQUIREMENTS THAT A CONSPIRACY CAUSE OF ACTION INCLUDE ALLEGATIONS OF COMMON MOTIVE, FORMA- TION OF THE AGREEMENT, ACTS IN FURTHERANCE.

The pleading requirements for conspiracy in the context of a civil rights claim were addressed in *Harris v. Roderick*  (1996) 933 Fd. Supp. 977.

This leaves Harris's claim that his Fourth Amendment rights were violated when the lies of Roderick and Cooper led to his arrest, unsupported by probable cause. The Defendants seek to dismiss this claim on the ground that Harris has failed to plead a sufficient causal connection between the alleged lies and the arrest. In the Ninth Circuit, the conspiracy claim is subject to a heightened pleading standard. Specifically, Harris must allege "nonconclusory allegations" that are "specific and concrete enough to <u>enable the defendants to prepare a response, and where appropriate, a motion for summary judgment based on qualified immunity</u>." *Mendocino Environmental Center v. Mendocino County,* 14 F.3d 457, 461 (9th Cir. 1994).

The Court has examined the Second Amended Complaint and finds that it meets this heightened pleading standard. Like the conspiracy claim approved by the Ninth Circuit in *Mendocino,* Count Two <u>details the formation of the conspiracy</u>, the <u>motivation</u> behind its creation, and the <u>actions of the participants in furthering</u> its alleged ends. The Court shall therefore reject this challenge to Count Two.

[Emphasis added.]

*Id.*, at p. 985-986 .

In *Harris*[1] the complaint included a *Bivens* cause of action. The complaint alleged that Federal officers confronted Plaintiff, his 14-year old son, another adult male, and the son's dog at the "Y" of two rural roads. *Id.* at 981. Officers commenced a confrontation by shooting the dog. *Id.* The son shot into the woods without striking either of the two officers. *Id.* A gun fight then broke out, resulting the in death of several citizens and one officer. *Id.*  Certain of the officers decided to lie about who shot the first and other details,

---

[1]  The quoted language in *Harris* contains a reference to "heightened pleading standard" in conspiracy cases.  This standard may no longer be good law, in view of *Galbraith v. County of Santa Clara* (9th Cir. 2002), 307 F.3d 1119) (holding heightened pleading standard no longer applies to constitutional tort claims in which improper motive is an element pursuant to Fed. R. Civ.P. 8(a)(2)  or except in cases expressly listed in Fed.R.Civ P. 9(b)).   See *Crawford-El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998);  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

which led to their arrest. *Id.* Plaintiff filed a suit claiming numerous causes of action including a count for conspiracy.

The contract formation element was expressed in slightly different but useful manner in *Storey v. United States* (N.D. Miss. 1986) 629 F.Supp. 1174, in a context relevant here, where the conspiracy is alleged between private citizens and the police. There the court stated" "The plaintiff must make a factual disclosure tending to show that the private defendant and public officials directed themselves toward unconstitutional actions in accordance with a mutual understanding. *Sparkman v. McFarlin,* 601 F.2d 261, 268 (7th Cir.1979)."

Circumstantial evidence is sufficient to establish the meeting of the minds, which is relevant in the instant case because Simonek's claim is based on the pleading of both an express and implied agreement. The United States Supreme Court in *Adickes v. S. H. Kress & Co.* (Adickes) (1970) 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142, faced a similar state action issue of an implied agreement in the context of a motion for summary judgment. A white woman, who was refused service in the defendant's cafeteria because she was in the company of blacks and who was subsequently arrested upon leaving the premises by local police for vagrancy, brought suit under § 1983. In that case, there was no evidence of communication between the defendant, who was a private party, and a police officer. Nonetheless, because a jury might "infer from the circumstances that the policeman and a Kress employee had a 'meeting of the minds' and thus reached an

understanding that petitioner should be refused service," the § 1983 claim was sustained. *Supra,* 398 U.S. at 158, 90 S.Ct. at 1608. Similarly in this case, Plaintiff may prove his allegation that there was an agreement, aside from the express agreement, between the police officers and the Burners to cause his false charges and resulting arrest, thus entitling him to § 1983 claim against the Burners.

In the instant case, in his Fourth Cause of Action Plaintiff alleges a conspiracy by the moving defendants, the Burners, to deprive him of both his Federal civil rights as well as his State rights. The FAC painstakingly alleges the elements of common motivation for the conspiracy, the formation of the conspiracy, and the acts in furtherance of the conspiracy, as detailed in the above Statement of Facts.

Motivation for the conspiracy is also alleged in detail. In paragraph 125, Simonek alleges that commencing in approximately August, 2012 the Burners knew of the police defendant's animus against homosexuals, of which class Plaintiff belongs, and further knew that they were invidiously discriminating and conspiring to act as previously alleged, for the purpose of impeding, hindering, obstructing, and defeating the due course of justice in the State of California and County of Los Angeles,[2] Thus, the motivation requirement of *Harris* and its cited *Mendocino* case is met here. Moreover, Paragraph 130 adds that because the Burners agreed and conspired "based what they believed to be Plaintiff's sexual orientation," the common motivation with the police officers and other

---

[2] Although paragraph 125 includes language, "in violation of 42 U.S.C. § 1983 (2)," the reference to "defeating the due course of justice in the State of California and County of Los Angeles" makes clear that § 1985 (2) was intended in this paragraph.

is alleged.[3] Thus, the motivation requirement of *Harris* and its cited *Mendocino* case is met in this case.

Formation of the conspiracy is alleged in detail. In paragraph 126, Simonek alleges the Burner defendants with said knowledge, impliedly and expressly planned and conspired with the Individual Police Defendants to deny Plaintiff equal protection, immunities and privileges of the laws as guaranteed under the Constitution of the State of California and of the United States Constitution.[4]  Thus, the "formation" conspiracy requirement of *Harris* and its cited *Mendocino* case is met here in this case. These are facts "tending to show that the private defendant and public officials directed themselves toward unconstitutional actions in accordance with a mutual understanding," as required by *Storey v. U.S, supra* and its cited case of *Sparkman v. McFarlin, supra.*

Actions of the participants in furthering the conspiracy are alleged in abundant detail as described in the above Statement of Facts. In paragraph 131, Plaintiff alleges various acts done by the Burners in furtherance of said conspiracy. Defendants cajoled and continued to cajole their child to change his testimony to accuse Simonek of the sexual touching and continued their cajoling up until the time of the grand jury hearing and at the criminal trial. Also alleged in this paragraph is Greg Burner's falsely testifying

---

[3] The fact that the Burners had an additional motive against Simonek, for his "disparaging their son for being a discipline problem in class" as referred to in paragraph 127, in no way detracts from their common animus based on sexual orientation.

[4] Again, although paragraph 126 includes, "in violation of 42 U.S.C. §1983 (3)," the reference to "equal protection, immunities" makes clear that 1985 (3) is intended in this paragraph.

at trial that he relayed to the prosecutor statements from his son in order to corroborate and explain the child's sexual accusation to the grand jury.  Thus, Plaintiff has suffiiciently pleaded all elements of a conspiracy for a violation of civil rights, and has demonstrated that facts alleged in the complaint meet these requirements.

The Burners' Motion to Dismiss is devoid of any citation of a case even remotely similar to the case at bar favoring dismissal. They cite *Olsen v. Idaho State Bd. of Medicine* (9th Cir. 2004) 363 F.3d 916 for the proposition that a dismissal is proper "when the complaint lacked any discussion of an agreement amongst the defendants to violate plaintiff's constitutional rights." They cite *Harris v. Roderick supra*, also for the foregoing proposition. An examination of the *Harris* case, however, further reveals that the court approved pleading similar to Plaintiff's pleading here, and for this reason this memorandum has set out the relevant portions of *Harris* above. Defendants also cite *Karim –Panahi v. Los Angeles Police Dep't* (9th Cir. 1988) 839 F.2d 621, 626 for its language, "A mere allegation of conspiracy without factual specificity is insufficient." Again, Defendants have ignored the large body of factual allegations showing formation of the conspiracy, so this case is inapplicable here. Finally, the Burners cite *Franklin v. Fox* (9th Cir. 2001) 312 F.2d 423, 441 for the requirement of  a "meeting of the minds." Likewise, this case is inapplicable, and for the same reason. Therefore, the Burners attack on the conspiracy allegation is without basis.

Before leaving the subject of the Burners' acts, the following is stressed. The motion and supporting documents submitted by the Burners' counsel fail to appreciate the pivotal role, timing and motivations of the Burners in the context of the allegations. The Burners' Motion to Dismiss seeks to minimize the impact of the Burners actions, ignoring the timing of their interviews. "The Burners were so marginally involved…there were other accusers…" (Def. Motion to Dismiss, p. 10). Police interviewed Ethan and his parents where they learned the Detectives were seeking criminal accusations. The Burners were the link to the accusers, the catalyst to criminal allegations being made. Their role cannot be underestimated, and the suppression of Ethan's exculpatory recording by police was a critical and intentional act in furtherance of the combined efforts to ensure an indictment of Plaintiff. Ethan is not merely but one of equal accusers, he was the first interviewee. Two weeks after speaking to police, conversations between Ethan, his friends and between his parent and his friends' parents led to the making of the criminal accusations police sought. The Burner family had a strong bias and motive to fabricate against Plaintiff. They enlisted their friends to retaliate against him. The Burners were the leaders who were catalysts to the other children and their parents in bringing the criminal accusations sought by the police. The police suppressed Ethan's contradictory statement as contained in the recorded police interview. Thus indeed the Motion to Dismiss and the supporting documents fail to appreciate and acknowledge the magnitude and significance of the Burners' acts.

## V.  THE BURNER DEFENDANTS' ARGUMENTS RESPECTING THE SECTION 1985 REQUIREMENT OF A "PROTECTED CLASS" RELIES ON OUTDATED CASES AND IGNORES RECENT SUPREME COURT DEVELOPMENTS.

Plaintiff's FAC alleges repeatedly that defendants have violated the Equal Protection Constitutional guarantee by reason of their disparate treatment of Plaintiff based on his sexual orientation (See above Statement of Facts.)

Defendants have responded that sexual orientation is not a "protected class" under 42 U.S.C. § 1985. They rely on two cases from the 1980's and two cases, one from 2009 and the other from 2011, which precede the United States Supreme Court recent case showing a different attitude regarding discrimination against gay persons. *Obergefell v. Hodges* (2015) 576 U.S. ___. This case shows, Simonek contends, that that the High Court deems discrimination against persons of different sexual orientation to be within the scope of the Equal Protection Guarantee as that term is used in 42 U.S.C. § 1985.

> The right of same-sex couples to marry that is part of the liberty promised by the Fourteenth Amendment is derived, too, from that Amendment's guarantee of the equal protection of the laws. The Due Process Clause and the <u>Equal Protection Clause</u> are connected in a profound way, though they set forth independent principles. Rights implicit in liberty and rights secured by equal protection may rest on different precepts and are not always coextensive, yet in some instances each may be instructive as to the meaning and reach of the other. In any particular case one Clause may be thought to capture the essence of the right in a more accurate and comprehensive way, even as the two Clauses may converge in the identification and definition of the right. See M. L. B., 519 U. S., at 120– 121; id., at 128–129 (KENNEDY, J., concurring in judgment); Bearden v.

Georgia, 461 U. S. 660, 665 (1983). This interrelation of the two principles furthers our understanding of what freedom is and must become.

Thus it is clear that the Equal Protection applies as a protection against animus directed at gay persons. As such, the holdings cited by Defendants now lack vitality, and at best are now of questionable value.

Therefore, the Court should deny the request to dismiss on this ground.

## VI.   IN ANY CASE, THE FOURTH CAUSE OF ACTION PLEADS FACTS SHOWING THE BURNERS CONSPIRED WITH POLICE DEFENDANTS TO DEPRIVE CIVIL RIGHTS, THUS MAKING ALLOWABLE THE LIABILITY ON A CONSPIRACY BASIS UNDER § 1983, EVEN IF THE "PROTECTED CLASS" ACTS AS A BAR FOR § 1985 CONSPIRACY PURPOSES .

A.   *The Fourth Cause of Action Pleads both* § 1983 *and* § 1985 *Conspiracies.*

Paragraph 135 pleads: "By reason of the foregoing, Defendants, and each of them, violated 42 U.S.C. § 1985 (2) and 42 U.S.C. section 1983." While criticism can be directed as to whether the pleading should state that Constitutional rights were violated thus giving the right to relief under said two statutes, the fact remains that the Fourth Cause of Action does indeed plead relief under section 1983.

And, because the Burner Defendants have not challenged this basis, the motion to dismiss this cause of action must be denied insofar as the Burners rely on their argument that Simonek does not fall within a protected class under § 1985.

B. *It is well settled a private citizen may conspire with police and that such will support § 1983 liability.*

It is well settled that a private citizen may conspire with a police officer acting under color of law to deprive constitutional rights and that such conspiracy will give rise to liability under 42 U.S.C. § *1983.* E.g. *Cooper v. Molko* (1981, N.D. Cal.) 512 F.Supp. 563. And the U.S. Supreme Court case cited above, *Adickes, supra,* 398 U.S. at 158, 90 S.Ct. at 1608 approves the reverse sequence where a police officer joins the conspiracy of private individuals.

Given that police defendants Humphrey and Garza conspired to suppress the exculpatory recording of the Burner's son, Ethan, denying sexual touching by Plaintiff made early in the investigation, the Burner's subsequent cajoling of their son to falsely testify triggers the application of the principle of law that once an ongoing conspiracy is established only "slight evidence" is necessary to show a new participant's joining the conspiracy.

Another principal of proof relating to conspiracy liability under Sec. 1983 is applicable to the Burners here. "Once a conspiracy is established, only slight evidence is required to link a defendant to it." *United States v. Shoffner* (7th Cir. 1987) 826 F.2d 619,  6276.

The FAC clearly establishes the conspiracy of Humphrey and Garza to suppress the exculpatory tape recording of Ethan Burner showing he did not claim to be touched on the genitals and buttocks. (¶ 38.)

Given the ongoing conspiracy by Humphrey and Garza, when the Burners defendants cajoled and continued to cajole their son to change his testimony and falsely accuse Simonek at the grand jury, they joined in the police conspiracy to deprive Simonek's civil rights.

Thus there is an alternate legal theory by which the Burners are liable under Sec. 1983 by way of conspiracy.

## VII.    SHOULD THE COURT GRANT ANY PORTION OF THE MOTION TO DISMISS, THEN PLAINTIFF REQUESTS LEAVE TO AMEND.

Should the Court determine that the pleadings fall short in any respect, it is requested that the Court grant leave to amend. A plaintiff is entitled to remedy shortcomings in pleading identified in a motion to dismiss. *Nevijel v. North Coast Life Insurance Co.*, (9th Cir. 1981) 651 F.2d 671.

## <u>CONCLUSION</u>

The Court should deny the motion to dismiss in full.

Dated:  June 6, 2016                    LAW OFFICES STEFFENY HOLTZ


BY     __/s/ Steffeny Holtz__

Attorney for JEFFREY SIMONEK